Karen M. D'ANGELO, Carol
I. Mansani, Plaintiffs,

v.

John E. POTTER, Postmaster General,
United States Postal Service, John
R. Kelley, Defendants.

No. CIV.A.01–12227–RBC [1].

United States District Court,
D. Massachusetts.

May 17, 2004.

Gerald F. Blair, Walpole, MA, for Karen
M. D'Angelo, Plaintiff.

Barbara Smith Healy, United States Attorney's Office, Boston, MA, for John E. Potter, Defendant.

Richard Heavey, Heavey, Houlihan, Kraft & Cardinal, Brookline, MA, for Karen M. D'Angelo, Carol I. Mansani, Plaintiffs.

Herbert D. Lewis, Lewis & Lewis, Boston, MA, for John R. Kelley, Defendant.

Jeremy M. Sternberg, United States Attorney's Office, Boston, MA, for United States Postal Service, Defendant.

### MEMORANDUM AND ORDER ON MOTION OF DEFENDANT, JOHN R. KELLEY, TO REMOVE DEFAULT (# 49, filed 2/4/04)

COLLINGS, United States Magistrate Judge.

### I. Introduction

The original Complaint (# 1) in this case and an Amended Complaint were filed on December 17, 2001 and May 19, 2002 respectively. The plaintiffs are two postal workers who claim that their supervisor, defendant John R. Kelley ("Kelley"), sexually discriminated against them and harassed and assaulted them while they were on duty at the post office. Kelley is also alleged to have raped D'Angelo at a post office in Dorchester. The other defendant is John E. Potter, the Postmaster General ("Potter").

### II. Procedural History

Kelley was served with both the Complaint (# 1) and the Amended Complaint (# 62, filed 5/19/2002) and a summons on May 22, 2002 in person by a constable.[2] Proof of service was filed. See # 5. He did not file any pleading in response to the summons.

---

1. The case has been reassigned to the undersigned pursuant to 28 U.S.C. § 636(c) and the parties' consent.

2. In an Affidavit, Etc. (# 51), Kelley does not deny that he was served; he asserts that he has

"...no recollection of having been served with a Summons on May 22, 2002, as indicated by Constable Marvin Feinman in his return of service."

Ten months later, on March 12, 2003, the plaintiffs requested that a Notice of Default issue against Kelley. *See* # 12. After a hearing on May 7, 2003, the Court granted the request, and issued an Order on Plaintiffs' Request for Default, Etc. (# 25). The Clerk issued the Notice of Default on May 20, 2003. *See* # 28. The Notice of Default read:

> Upon application of the Plaintiffs, Karen M. D'Angelo and Carol I. Mansani, for an order of Default for failure of the Defendant, John R. Kelley, to plead or otherwise defend as provided in Rule 55(a) of the Federal Rules of Civil Procedure, notice is hereby given that the Defendant has been defaulted this 20th date of May 2003.

Copies of both the Order (# 25) and the Notice (# 28) were mailed to Kelley at the same address at which he had been served by the constable on May 22, 2002, i.e., 4 Crescent Terrace, Saugus, Massachusetts.[3]

On the same date, May 7, 2003, the Court allowed a motion to amend the Amended Complaint. A Second Amended Complaint (# 21)[4] was filed pursuant to the Court's grant of leave. Although a copy was mailed to Kelley at 4 Crescent Terrace, Saugus, he did not respond to it.

At this stage of the proceedings, the other defendant in the case, Potter, had filed an answer, and the case against him was proceeding. Since the claims against Potter were based on Kelley's acts as a supervisor employed by the Post Service, the plaintiffs needed discovery from Kelley. On September 29, 2003, Kelley was served with a deposition subpoena at his home at 4 Crescent Terrace, Saugus.[5] He appeared for his deposition on October 2, 2003 at the U.S. Attorney's Office at the John Joseph Moakley United States Courthouse but other than giving his name, invoked his Fifth Amendment privilege as to all questions. *See* # 45.

The subpoena with which Kelley was served on September 29, 2003 also commanded him to appear at a certain location at 1:00 P.M. on October 2, 2003, after the completion of his deposition, to give "buccal swab, also know as a cheek swab and a blood sample." *See* # 40, Exh. 1. Kelley did not appear at the location.

Thereafter, plaintiff D'Angelo filed a motion to compel Kelley to give a DNA sample and to show cause for the failure to comply with the subpoena. *See* # 40. A copy of the pleading was served on Kelley by mail at 4 Crescent Terrace, Saugus. *Id.* On November 17, 2004, the Court issued a Procedural Order (# 41) directing Kelley to file and serve an opposition to D'Angelo's motion by November 26, 2004 if he, in fact, opposed it. A copy of the Procedural Order was mailed to Kelley at 4 Crescent Terrace, Saugus by the Clerk by both regular mail and certified mail, return receipt requested. The copy sent by regular mail was not returned. However, the copy sent by certified mail was returned with the notation that, despite notices to the addressee on November 19, 2003, November 24, 2003 and December 4, 2003, the certified mail had been "unclaimed."

Kelley did not file any pleading in response to the Procedural Order. On December 17, 2003, the Court issued an Order to Show Cause (# 47) directing Kelley to appear before the Court on December 23, 2003 to show cause why he should not be held in contempt for failure to comply with the subpoena. The Order to Show Cause was mailed to Kelley at 4 Crescent Terrace, Saugus by the Clerk by both regular mail and certified mail, return receipt requested. As happened with the Procedural Order, the copy which was sent by regular mail was not returned by the Post Office. However, the copy set by certified mail was returned with the notation that, despite notices to the addressee on December 20, 2003, December 25, 2003 and January

---

**3.** In his Affidavit, Etc. (# 51), Kelley avers: "I reside at 4 Crescent Terrace, Saugus, MA and have resided there at all times material thereto."

**4.** The docket reflects that the Second Amended Complaint (# 21) was "filed" on May 5, 2003. May 5th was the date on which the motion to amend was filed; the Second Amended Com-

plaint could not be filed until the Court granted leave to file. Leave was not granted until May 7th.

**5.** In his Affidavit, Etc. (# 51), Kelley acknowledges service of the subpoena.

4, 2004, the certified mail had been "unclaimed."

Nevertheless, Kelley appeared on December 23, 2003 and, in response to the directive that he show cause, asserted that he had consulted a lawyer, Herbert Lewis, Esquire, who advised him not to obey the subpoena. The Court ordered Kelley to return to Court with Attorney Lewis on January 7, 2004.

On January 7, both Kelley and Attorney Lewis appeared. Since plaintiff D'Angelo had settled with Potter, her attorney indicated that she would not seek a DNA sample from Kelley if he were not going to seek to remove the default, preferring in that instance to proceed to an assessment of damages. Accordingly, the Court granted Attorney Lewis a period of time to decide whether Kelley would seek to remove the default. The Motion of Defendant, John R. Kelley, to Remove Default (# 49) was filed on January 22, 2004.

### III. The Grounds Upon Which Kelley Seeks Removal of the Default

Kelley's argument is that the default should be removed because the Second Amended Complaint, filed on May 7, 2004, had the effect of superseding the original Complaint (and the Amended Complaint), and, therefore, he could not be defaulted because he was not served with the Second Amended Complaint by a constable or officer. In the words of his attorney:

On May 7, 2003, the Court entered an Order granting the Request for Default against the defendant, John R. Kelley, "for having failed to answer or otherwise plead to the Complaint after having been served with the Summons and Complaint";

The Second Amended Complaint was never served by an officer on the defendant, John R. Kelley;

The defendant submits that the default against him entered for failing to answer to a Complaint that no longer existed as part of this case. The original Complaint, on the date the default entered May 7, 2003 had been superseded by the Second Amended Complaint, and the defendant

was never defaulted for failing to file and answer to that pleading.

Response of Defendant, Etc. (# 56).

The Court notes that Attorney Lewis cites no law (statutes, rules, cases, etc.) in support of this theory.

### IV. Analysis

■ Rule 5, Fed.R.Civ.P. Rule,[6] ("Rule 5") governs the service of pleadings and other papers subsequent to the original summons and complaint. With respect to the original summons and complaint, Rule 4(c) provides, in pertinent part, that "[a] summons shall be served together with a copy of the complaint" and that "[s]ervice may be effected by any person not a party and who is at least eighteen years of age." In the instant case, as indicated, *supra*, the complaint and amended complaint together with the summons were personally served on Kelley by the constable on May 22, 2002.

With respect to pleadings filed *after* the original summons and complaint, Rule 5(a) requires the service of all pleadings and other similar papers to all defendants. However, the rule allows for service of documents subsequent to the original complaint and summons by mail rather than in person. *See* Rule 5(b)(2)(B).

For parties in default, Rule 5(a) provides that "[n]o service need be made on parties in default for failure to appear except that pleadings asserting new or additional claims for relief against them shall be served upon them in the manner provided for service of summons in Rule 4." Rule 5(a).

Thus, Rule 5 creates a two-part test to determine whether a defendant is entitled to service of a pleading subsequent to the original complaint. First, is the defendant in default, and second, does the subsequent pleading contain new or additional claims for relief? If a defendant is found to be in default, the plaintiff has no legal obligation to serve any document on the defendant except for an amended complaint that contains new or altered claims for relief.

---

6. Henceforth, the reference to specific rules in the Federal Rules of Civil Procedure will be simply to "Rule"; the citation to Fed.R.Civ.P. will be omitted.

As to the first question, for a party to be in default, the Court need not have adjudicated a default. If the defendant has been "served with the summons and do[es] not appear and answer within the required period, they are 'parties in default' for Rule 5(a) purposes." *Cutting v. Town of Allenstown,* 936 F.2d 18, 21 n. 1 (1 Cir., 1991) (citing *Varnes v. Local 91, Glass Bottle Blowers Association,* 674 F.2d 1365, 1368 n. 3 (11 Cir., 1982)). In *Varnes,* the Eleventh Circuit held that "[a] court need not have adjudicated a party as being 'in default.' Thus a party failing to appear is a party 'in default for failure to appear.' " *Varnes,* 674 F.2d at 1368 n. 3 (11 Cir., 1982).

In the instant case, following service of the summons on May 22, 2002, Kelley had twenty days to respond. Thus, applying the law enunciated in the *Cutting* and *Varnes* cases, the defendant was "in default" on June 12, 2002 for the purposes of Rule 5(a), even though the adjudication of a default did not take place until May 7, 2003.

As to the second question, pursuant to Rule 5(a), "[p]arties who have never made an appearance in the proceedings (and are thus in default for failure to appear) must be served with a copy of any pleading or similar paper which asserts a new or additional claim for relief." 1 *Moore's Federal Practice* § 5.03[4] (3d ed.2003). Therefore, if an amended complaint contains "no new or additional claims for relief, it need not be served on the defaulting defendant." *Combs v. Coal & Mineral Management Services, Inc.,* 105 F.R.D. 472, 474 n. 1 (D.C.Cir., 1984); *see also Appleton Electric Co., v. Graves Truck Line, Inc.,* 635 F.2d 603, 610 (7 Cir., 1980).

In the instant case, it is worth noting that the record indicates that the Second Amended Complaint *was* served on Kelley, albeit pursuant to Rule 5(b)(2)(B) (providing for service by mail) rather than pursuant to Rule 4. The Second Amended Complaint, dated May 5, 2003, contains a certificate of service by plaintiff D'Angelo's attorney Gerald F.

Blair, Esquire, that he served the Second Amended Complaint upon "…the Defendant John R. Kelley at 4 Crescent Terrace, Saugus, Massachusetts 01906 by first class mail, postage prepaid." *See* # 21. Kelley seems to imply that he did not receive a copy of the Second Amended Complaint, stating that he "…did not actually know that [he] was a defendant in this proceeding…" until he was served with his deposition subpoena on September 29, 2003. *See* # 51, ¶¶ 3, 4.[7]

However, the service of the Second Amended Complaint by mail is immaterial to the issue before the Court. If the Second Amended Complaint contained no new and/or additional claims for relief against Kelley, there was no requirement that Kelley, being in default, be served with the pleading by any method. However, if the Second Amended Complaint did contain new and/or additional claims against him, he would be entitled to service pursuant to Rule 4, not Rule 5(b)(2)(B).

Determining whether any new or additional claims for relief were made by the plaintiffs requires a comparison of the plaintiffs' amended complaint (# 3) and second amended complaint (# 21). The only amendments made in the second amended complaint to the claims against Kelley are the addition of four paragraphs specifying the damages requested. (# 21 ¶¶ 26, 41). Thus, in the Amended Complaint, the prayer for damages was contained in a "WHEREFORE" paragraph after each count. For example, that clause in Count Two and Four of the Amended Complaint read as follows:[8]

> WHEREFORE, the plaintiff, Karen M. D'Angelo, [Count Two and] Karen Mansani [Count Four] demand[s] judgment against the Defendant, John R. Kelley, for damages and costs.

Amended Complaint (# 62 at pp. 4, 6).

In the Second Amended Complaint, the new paragraphs (¶¶ 26 & 41) and the "WHEREFORE" clauses of Count Two and

---

7. The Court, considering the many mailing which were made to Kelley at 4 Crescent Terrace, Saugus, which were not returned by the Post Office, is quite wary of giving any credence to Kelley's assertions of non-receipt of mail.

8. Kelley is not named in Counts One and Three.

Four read as follows: 26. [D'Angelo] 41. [Mansani]

26,41. The Plaintiff...asserts that she is entitled to recover compensatory damages, including but not limited to, past pecuniary damages, future pecuniary damages and non-pecuniary damages, past medical expenses, future medical expenses, past lost earnings and/or earning capacity, future lost earnings and/or lost earning capacity, emotional distress, mental anguish, pain and suffering and all other items of compensatory damages, together with interest and costs, expenses and attorneys [sic] fees thereon proximately caused by the acts omissions and violations of law alleged herein against Defendant John R. Kelley.

WHEREFORE, the Plaintiff...demands judgment against the Defendant, John R. Kelley, for damages and costs, expenses and attorneys [sic] fees and further prays for such other relief as the Court may deem meet and just in the circumstances including, but not limited to, all lost moneys and benefits, compensatory damages and punitive damages.

Second Amended Complaint (# 21 at pp. 4, 7)

The Court is of the view that the addition of the specification of the categories of compensatory damages sought does not add any new or additional claims. The only issue is whether the claims for attorney's fees and punitive damages, which are not found in Counts Two or Four of the Amended Complaint, can be said to constitute new and/or additional claims.

■ The law is that a claim for attorney's fees which is based on a statutory entitlement to such fees is not a new and/or additional claim under Rule 5. *Varnes,* 674 F.2d at 1368-9. However, when the request for attorney's fees is based on "equitable and not statutory grounds," it is a new and/or additional claim. *Varnes,* 674 F.2d at 1369.

Counts Two and Four are state law tort claims for rape (D'Angelo) and assault and battery (Mansani). The Court knows of no Massachusetts statute which provides for an award of attorney's fees in such cases. The Court has not researched the issue of wheth-

er or not there are non-statutory grounds for a fee award in these types of cases because it does not matter. If the added prayer for attorney's fees in the Second Amended Complaint is not based on statutory grounds, it is a new and/or additional claim which is required to be served on Kelley pursuant to Rule 4.

The theory behind this result is simply stated. "[A] motion for attorney's fees when a statute authorizes them merely seeks what is due because of the judgment." *Varnes,* 674 F.2d at 1368 citing *Knighton v. Watkins,* 616 F.2d 795 (5 Cir., 1980). When the request for attorney's fees is not based on a statutory entitlement,

...as a matter of basic fairness, [the defendant] ought to know that it may be liable for them. The Federal Rules of Civil Procedure anticipate that [a defendant], if given proper notice that [the plaintiffs] sought attorney's fees, could have resorted to discovery and other pre-trial procedures to "disclose more precisely the basis of both claim and defense and to define more narrowly the disputed facts and issues." *Conley v. Gibson,* 355 U.S. 41, 47–48, 78 S.Ct. 99, 102–103, 2 L.Ed.2d 80, 85 (1957).

*Varnes,* 674 F.2d at 1368.

It does not matter whether the claim for attorney's fees is meritorious.

The concern of Rules 4 and 5(a) is notice to the defendant of claims for relief. With this new information the defendant is entitled to take a position on the new claim for relief: to move for a more definite statement (Rule 12(e)), to move to strike portions of the pleadings (Rule 12(f))...[etc.].

*Varnes,* 674 F.2d at 1368.

Although the Court has not found a case on point, the same analysis would seem to be applicable to the request for punitive damages. This also would be a new and/or additional claim for relief against Kelley.

### V. Conclusion and Order

The defendant has been "in default" since June 12, 2002. He was properly served pursuant to Rule 4 with the summons and the original complaint (and the amended com-

plaint). Because the requests for an award of attorney's fees and punitive damages were first made in the Second Amended Complaint and they are new and/or additional claims for relief, the plaintiffs were required to serve Kelley with the Second Amended Complaint pursuant to Rule 4. *See* Rule 5(a). The plaintiffs admittedly did not do so. Thus, the default cannot stand. It is ORDERED that the Motion of Defendant, John R. Kelley, to remove Default (# 49) be, and the same hereby is, ALLOWED.

The Plaintiffs are directed to serve Kelley, pursuant to Rule 4, with a copy of the Second Amended Complaint FORTHWITH. Kelley shall respond to the Second Amended Complaint within ten (10) days of being served.